Thomas I. FITZGERALD, Public Administrator of the County of New York, State of New York, Administrator of the Estate of Constantinos S. Kapsis, Deceased, Appellant,

v.

LIBERIAN S/T CHRYSSI P. GOULANDRIS, her boats, engines, tackle, apparel, etc., and Andros Compania Maritima, S. A., Norfolk House, Frederick Street, Nassau, Bahamas, Andros Maritime Company Limited, Norfolk House, Frederick Street, Nassau, Bahamas, Pacific Oil Carriers Corp., a Liberian Corporation or association, and Orion & Global Chartering Co., Inc., a New York Corporation or association as owners and/or operators of the LIBERIAN S/T CHRYSSI P. GOULANDRIS, Appellees.

No. 77–1178.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 9, 1978.

Decided Aug. 7, 1978.

Burt M. Morewitz, Newport News, Va. (Herbert Lebovici, New York City, on brief), for appellant.

John R. Crumpler, Jr., Norfolk, Va. (Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, and RUSSELL and WIDENER, Circuit Judges.

PER CURIAM:

On May 24, 1974, Constantinos S. Kapsis, a Greek seaman, signed in Greece a contract under which he received in Greece a payment of $141 and agreed to proceed to the United States to sign on board the Liberian S/T Chryssi P. Goulandris. Five days later, May 29, in Norfolk, Virginia, Kapsis signed articles for the Chryssi P. Goulandris, and went on board. As determined by the district court, the following is the chronology of Kapsis' service aboard the ship:

| 1 June 1974 | vessel sails for Boston |
| 2–5 " | vessel in Boston, discharging cargo |
| 6 " | sail for Trinidad |
| 11 " | arrive Trinidad |
| 15 " | sail for Philadelphia |
| 21 " | arrive Philadelphia |
| 23 " | sail for Boston |
| 25 " | arrive Boston, Kapsis is paid $158.35 |
| 28 " | sail for Iran |
| 2 July | Kapsis dies on the high seas |

In the district court plaintiff Thomas I. Fitzgerald, administrator of Kapsis' estate, brought suit contending that the May 24 payment of $141 and the June 25 payment of $158.35 were illegal advances under 46 U.S.C. § 599. In addition, he claimed that under 46 U.S.C. § 596 Kapsis became entitled in Boston on June 25 to end of voyage payment of all accrued wages, and that the failure to pay required imposition of the statutory "waiting time" penalty. Finally, plaintiff demanded damages for unseaworthiness and wrongful death based on negligence under the Jones Act, 46 U.S.C. § 688. Defendants are the ship, Pacific Oil Carriers Corp., owner of the ship, and various other corporations associated with the management of the ship.

The district court dismissed the wage claims and declined to exercise jurisdiction over the negligence and unseaworthiness claims. Fitzgerald appeals from the judgment below, and we affirm.

The first assignment of error involves the district court's finding that the May 24, 1974 payment of $141 to Kapsis was not a violation of 46 U.S.C. § 599, which prohibits the payment of wages to a seaman "in advance of the time when he has already earned the same." This prohibition does not apply, however, to the advance payment of wages to a foreign seaman by a foreign vessel in a foreign country. *Jackson v. SS Archimedes,* 275 U.S. 463, 48 S.Ct. 164, 72 L.Ed. 374 (1928), following *Sandberg v. McDonald,* 248 U.S. 185, 195–96, 39 S.Ct. 84, 63 L.Ed. 200 (1918). Kapsis was Greek; the initial contract was made in Greece; the vessel is Liberian; payment occurred in Greece. Accordingly, the district court correctly ruled that the May 24 $141 payment to Kapsis was not an illegal advance. Plaintiff's citations to our decisions in *Heros v. Cockinos,* 177 F.2d 570

(4th Cir. 1949), and *Korthinos v. Niarchos,* 175 F.2d 730 (4th Cir.), cert. den., 338 U.S. 894, 70 S.Ct. 241, 94 L.Ed. 550 (1949), are unavailing. In both of these cases, the advances held to be illegal under § 599 were made in the United States. 177 F.2d at 571, 175 F.2d at 734.

■ Appellant next asserts that the district court erred when it found that under 46 U.S.C. § 596 no end of voyage payment of accrued wages was due Kapsis in Boston on June 25, 1974. Section 596 requires that:

"The master or owner of any vessel . . shall pay to every seaman his wages . . in case of vessels making foreign voyages . . . within twenty-four hours after the cargo has been discharged, or within four days after the seaman has been discharged, whichever first happens . . .."

In the district court, plaintiff apparently argued that, reading § 596 too literally, Kapsis was due full payment of wages in Boston on June 25 because the vessel had discharged its cargo there. The trial court, however, following *The Cubadist,* 256 F. 203 (5th Cir.), cert. den., 249 U.S. 618, 39 S.Ct. 392, 63 L.Ed. 804 (1919), held that § 596 was intended to refer "only to the discharge of cargo after the completion of the voyage for which the seaman shipped." Plaintiff's interpretation, the court reasoned, would have required payment whenever a vessel discharged its cargo, even if no voyage had been completed. The court found that Kapsis had signed for a one-year voyage, but had served only thirty-three days before his death. No demand for payment under 46 U.S.C. § 597 was made, and the court thus found there was no good faith wage claim as to this item. On appeal, plaintiff essentially renews this argument. No basis for distinguishing *The Cubadist* has been presented, and we affirm this point on the basis of the district court's analysis.

We have noted plaintiff's claim that the payment of certain wage items by defendants after suit was brought necessarily proves the good faith of the statutory wage claims. That wage items were paid to the plaintiff, however, does not indicate that payment was due under § 596 in Boston on June 25, 1974, as plaintiff claims. In the absence of a § 597 demand, defendants were under no statutory duty to pay Kapsis any wages on June 25. Accordingly, they cannot be found to have violated § 596 by paying Kapsis only part of the wages he had then accrued. Wage items paid by defendants after suit was initiated and any claims still remaining arose only under Kapsis' contract of employment, not as a result of a violation of § 596 on June 25, 1974.

■ Taking plaintiff's argument quite broadly, he may be said to argue here that Kapsis' death constituted a discharge under § 596, thus mandating the payment of wages within four days. Assuming that such a claim were presented, and assuming further (which we do not decide) the applicability of United States wage statutes to the event, we are still of opinion that no good faith statutory wage claim was presented. The district court in this instance thought that § 596 would not apply because "[i]f death is a discharge of the seaman, Kapsis was not discharged by a foreign vessel while in the waters of the United States, but rather at high sea." Plaintiff is correct in asserting that the district court was incorrect if it thought that an extraterritorial discharge necessarily precluded the applicability of American wage statutes. *Heros v. Cockinos,* 177 F.2d at 571 (discharge in Spain did not prevent application of 46 U.S.C. § 599). Nevertheless, the judgment of a trial court will be affirmed if correct, although for a different reason. *SEC v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943). *Thompson v. Offshore Co.,* 440 F.Supp. 752, 766–68 (S.D.Texas 1977), supports the judgment rendered below. In *Thompson* the district court considered a claim that under § 596 the death of oil derrick workers (assuming they were seamen) required the payment of accrued wages within the statutory time following their death. In that court's view, 46 U.S.C. §§ 621–28 provided the applicable remedy, implying that for purposes of § 596 death is not a discharge. Applying that rationale to this case, we

think that since death is not a discharge, no § 596 claim could have arisen on Kapsis' death. At least when the death occurs on the high seas or far from the home port of the ship and the home of the seaman, the Congress, in enacting this old statute, could not have intended the four day wage payment requirement to apply. There were then problems of communication, and even today payment may not be made until the person or those persons to whom payment must be made can be identified and communicated with. Settlement of the many problems of property succession that arise simply could not have been intended by Congress to be achieved in so short a time. We also note the provisions of §§ 621–28 are not applicable here because there is no claim that Kapsis was employed, as 46 U.S.C. § 621 requires, "on a voyage which is to terminate in the United States."

 As we agree that no good faith statutory wage claim was presented, it follows that the district court was not required to exercise jurisdiction of plaintiff's remaining claims. E. g., *Dutta v. Clan Grahan,* 528 F.2d 1258, 1260 (4th Cir. 1975). Nevertheless, the district court should have heard plaintiff's Jones Act claim if an adequate independent basis were found, and the next assignment of error thus relates to the district court's decision to decline jurisdiction of the Jones Act negligence claim.[1] In *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), and *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the Supreme Court set out various factors that guide a court in determining the applicability of the Jones Act. The factors are place of the wrongful act, law of the flag, allegiance or domicile of the injured seaman, allegiance of the defendant shipowner, place of contract, inaccessibility of a foreign forum, law of the forum, and the shipowner's base of operations. See 345 U.S. at 583–590, 73 S.Ct. 921, 398 U.S. at 309, 90 S.Ct. 1731. Considering these cases, the district court found that the allegedly wrongful acts occurred for the most part on the high seas,

that the ship was Liberian, that Kapsis was Greek, that the shipowner corporation was Liberian with Greek shareholders neither of whom resides in the United States, that the place of contract was Norfolk and Greece, that the Greek courts were available and in fact more convenient than a United States district court, and that the vessel's major base of operations is not in the United States. None of these findings are clearly erroneous, FRCP 52(a). As considerations of law of the forum, 345 U.S. at 590, 73 S.Ct. 921; do not dictate otherwise, this case, like *Lauritzen,* presents as a significant American contact only the fact that a place of contract was the United States. Since the Court held in *Lauritzen* that the Jones Act was inapplicable, the same result should apply here.

Being of opinion that the district court did not abuse its discretion in overseeing the discovery process, and that all assigned errors are without merit, the judgment of the district court is

AFFIRMED.

---

1. No question is made here of the correctness of the district court's decision to decline jurisdiction of the unseaworthiness claim.