Stephen J. MOREWITZ, Administrator d.b.n. of the Estate of Fotios Kannes, Deceased, Appellant,

v.

ANDROS COMPANIA MARITIMA, S. A., Norfolk House, Frederick Street, Nassau, Bahamas and Orion & Global Chartering Co., Inc., a New York corporation or association as owners and/or operators of the vessel EVGENIA G., Appellees,

and

Liberian EVGENIA G., formerly Greek Evgenia G., her boats, engines, tackle apparel, etc., Caribbean Sea Carriers, Ltd., a Liberian corporation or association, Callosa Compania Naviera, S. A., a Panamanian corporation or association, Capeside Steamship Co., Ltd., an English corporation or association, United Shipping and Trading Co. of Greece, S. A. a Greek corporation or association, Andros Maritime Company Limited, Norfolk House, Frederick Street, Nassau, Bahamas, Defendants.

No. 79–1034.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1979.

Decided Jan. 28, 1980.

---

Burt M. Morewitz, Newport News, Va. (Herbert Lebovici, New York City, on brief), for appellant.

John R. Crumpler, Jr., Norfolk, Va. (Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., on brief), for appellees.

Before HAYNSWORTH, Chief Judge, FIELD, Senior Circuit Judge, and MURNAGHAN, Circuit Judge.

MURNAGHAN, Circuit Judge:

Fotios Kannes, a Greek seaman, died at sea near the Philippine Islands aboard the cargo vessel EVGENIA G. on November 26, 1973. Asserting claims (a) for unpaid wages under 46 U.S.C. §§ 596, 597, 599, (b) for damages based on negligence under the Jones Act, 46 U.S.C. § 688 and (c) for damages based on unseaworthiness under the general maritime law, the personal representative (Appellant) commenced the instant suit in the United States District Court for the Eastern District of Virginia in September 1976 against Andros Compania Maritima, S.A., a Panamanian corporation which acted as the general managing agent of the shipowners and Orion & Global Chartering Co., Inc., the American sub-agent, and other defendants.[1]

After a protracted preliminary skirmish related to the question of whether jurisdiction existed over one or more of Appellant's claims and, if so, whether the district court should exercise the same, the court below held that it lacked jurisdiction over the statutory wage claim since the wage claim was not asserted in good faith and that the Jones Act was inapplicable to the facts of

---

1. Service of process was never obtained as to the other putative defendants among whom is the shipowner, Callosa Compania Naviera, S.A.

this case. It dismissed the complaint in its entirety. We affirm.[2]

## I.

Appellant's decedent signed a seaman's employment contract on March 2, 1973 in Piraeus, Greece. On March 4, 1973 he went aboard the EVGENIA G. in Italy. During the period from April through October 1973 the EVGENIA G. called at various American ports. The decedent received an advance against future earnings at New Orleans on April 25, 1973 in the amount of $54.78. Despite the provisions of 46 U.S.C. §§ 596 and 599, that amount was withheld from subsequent wage payments. Allegedly certain wages for overtime were not paid to decedent. Appellant further claimed that such unpaid overtime, together with arithmetic errors in decedent's wage accounts, resulted in shortages in decedent's pay during the period from April through October 1973.

Under 46 U.S.C. §§ 596 and 599, a double wage penalty may be assessed in appropriate circumstances against a "master or owner" for the unreasonable withholding of wages. Appellant has sued for such "waiting time" penalties.

Less than two months after decedent's death his heirs received, in Greece, the wages shown by the final wage account to be due to decedent up until the date of his death. The wage account did not reflect the alleged shortages described above.

Upon receipt of the wages the heirs executed a release in favor of "the Shipowning Company and everybody concerned on the vessel EVGENIA G." as to any claim for wages. Notwithstanding the release, an additional day's wages were paid to decedent's heirs about the time this action was instituted. Such wages covered employment for March 3, 1973. Although decedent did not go aboard ship until March 4, 1973, his contract of employment stipulated that wages would be paid commencing March 3, 1973. Thus, the September 1976 payment of one day's wages corrected the inadvertent failure to pay wages pursuant to the employment contract.

## II.

It is well established that wage claims must be asserted in good faith to support a district court's adjudication of such claims. *Fitzgerald v. Liberian S/T Chryssi P. Goulandris,* 582 F.2d 312, 315 (4th Cir. 1978) (*per curiam*); *Dutta v. Clan Grahan,* 528 F.2d 1258, 1260 (4th Cir. 1975).[3] The precise contours of the good faith requirement are not easily determinable. " '[G]ood faith' is, of course, as elusive a concept in this context as it is in any other context." Gilmore & Black, The Law of Admiralty, 479 (2d ed. 1975). Necessarily, the district court enjoys considerable latitude in determining the existence *vel non* of good faith. A good faith issue presents a factual question and the district court's decision will not be disturbed unless it is clear-

---

2. The same considerations which informed the district court's decision to dismiss the Jones Act claim apply with equal force as to its jurisdiction over the claim under the general maritime law. *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970) announced a cause of action for wrongful death under the general maritime law cognizable in an American court. However, jurisdictional considerations for such claims are identical with those governing cases under the Jones Act. *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 382, 79 S.Ct. 468, 485, 3 L.Ed.2d 368, 388 (1959). Accordingly, we treat only the question of the propriety of the dismissal of the wage claim and of the Jones Act claim. What is said of the Jones Act claim applies fully to the claim of unseaworthiness under general maritime law.

3. Retention by the district court of wage claims requires the court, absent "special circumstances", to exercise jurisdiction over all claims. *See Dutta v. Clan Grahan, supra,* 528 F.2d at 1260. The rule is grounded on judicial desire to avoid fragmented litigation where different claims arise out of the same or closely related circumstances. *Cf. The Fletero v. Arias,* 206 F.2d 267, 271 (4th Cir.), *cert. denied* 346 U.S. 897, 74 S.Ct. 220, 98 L.Ed. 398 (1953) ("complete relief" should be awarded "in one suit"); *Gkiafis v. Steamship Yiosonas,* 387 F.2d 460, 464 (4th Cir. 1967) (court should "see that full justice is done with respect to entire matter").

ly erroneous. *Grevas v. M/V Olympic Pegasus*, 557 F.2d 65, 68 (4th Cir. 1977).[4]

■ We do not find erroneous the district court's determination that the release executed by the heirs pretermits a finding that the wage claim has been asserted in good faith. It is true that the heirs had no knowledge independent of that obtained from decedent's employer as to the exact amount of wages due. Yet the contention that the release should be set aside for that reason is untenable. Appellant does not contest the finding below that the circumstances surrounding the release involved no "fraud, duress or unseemly conduct."

4. In the present context, the use of "good faith", a term associated with presence or absence of proper motive, may not seem apt when the resolution is in terms of whether the claim is one which will succeed or not. As pointed out in *Dutta v. Clan Grahan, supra*, 528 F.2d at 1260: "A claim may be asserted in good faith even though it ultimately may be found to be unmeritorious." Nevertheless, in the circumstances, prognostication as to probable success or lack of success of the action is a surer technique for assessing good faith than any other. Concentration on prospects of success is reasonable where jurisdiction of another claim will exist only on a pendent basis. To keep the tail from wagging the dog, it is sound judicially to make sure that the claim on which jurisdiction depends is not entirely devoid of any prospect of success.

In *Dutta v. Clan Grahan*, the fact that the wage claims were "weak" was not deemed sufficient to establish lack of good faith. Here the determination goes further, *i. e.* it is that the wage claims cannot succeed. Such a determination suffices as support for the district court's finding of lack of good faith. *Cf. Fitzgerald v. Liberian S/T Chryssi P. Goulandris, supra*, 582 F.2d at 313–14.

5. Our action in setting aside the wage settlements in *Korthinos* was based upon the second proviso of 46 U.S.C. § 597 which states:

* * * *Provided further*, That notwithstanding any release signed by any seaman under section 644 of this title any court having jurisdiction may upon good cause shown set aside such release and take such action as justice shall require. * * *

*See Pacific Mail S.S. Company v. Lucas*, 258 U.S. 266, 42 S.Ct. 308, 66 L.Ed. 614 (1922). Since the plain language of the statute conclusively establishes its applicability solely to releases "signed by any seaman", Appellant properly does not contend that the statute itself authorizes the district court to set aside the release.

Nor may Appellant avoid the bar of the release on the ground that a release of wage claims executed by survivors of a seaman is of that species of *seamen's releases* as to which strict judicial scrutiny customarily is accorded. Nothing in *Korthinos v. Niarchos*, 175 F.2d 730 (4th Cir. 1949), in which we set aside wage settlements executed by seamen, compels the conclusion that the special protection afforded seamen's claims to unpaid wages is available to one whose interest is merely derivative from that special status.[5] At least in respect to claims for unpaid wages, the ward-of-the-court status for seamen is essentially personal and does not devolve on heirs.[6]

6. The view that close scrutiny of the release of wage claims is not appropriate in this case is consistent with the "apparent rationale" of 46 U.S.C. § 596:

* * * that seamen not be stranded in foreign ports remote from where they were employed without payment of a significant portion of the amounts due them, so as to obviate their being without funds or under economic compulsion to sign new articles on terms and conditions dictated by the master or owner.

*Eaton v. SS Export Challenger*, 376 F.2d 725, 727–28 (4th Cir. 1967).

Other courts, in related circumstances, have emphasized the wardship theory's unique underpinnings. *E. g., Capotorto v. Compania Sud Americana de Vapores, Chilean Line, Inc.*, 541 F.2d 985 (2d Cir. 1976). In *Capotorto*, a majority of the panel held, apparently in disagreement with the rule in this Circuit, that releases signed by longshoremen of personal injury claims are not subject to strict scrutiny. The Court stated:

The particularly authoritarian relationship of shipowners and their representatives to seamen and the isolation of the latter from the legal, economic, and psychological support of a landbased community may put the seaman at a serious bargaining disadvantage. * * * Nor do we think special treatment of longshoremen is dictated by other considerations formerly cited to justify the status of seamen as "wards of the admiralty," such as their alleged propensity toward "rashness" and "credulity." * * *

541 F.2d at 987.

In any event, especially since the court below noted that Appellant did not allege that "the amount of money given in settlement was not a fair and just amount," it is difficult to see how the shift in the burden of proof on the issue of the fairness of the release would alter the district court's finding that the wage claims are not asserted in good faith.

■ The contention that the payment of the March 3, 1973 wages somehow vitiated the effect of the release is similarly unavailing to Appellant. We agree with the district court that the vitality of the release to avoid an otherwise legitimate contractual liability does not require its invocation under any and all circumstances on pain of losing its protection altogether. *Cf. Fitzgerald v. Liberian S/T Chryssi P. Goulandris*, 582 F.2d 312, 314 (4th Cir. 1978).

In sum, none of Appellant's contentions designed to overcome the bar of the release, all of which were advanced and rejected below, persuades us to upset the district court's finding that the wage claim is not asserted in good faith.

### III.

■ There remains the question whether the Jones Act applies to this case. We stated in *Fitzgerald v. Liberian S/T Chryssi P. Goulandris, supra,* 582 F.2d at 315:

As we agree that no good faith statutory wage claim was presented, it follows that the district court was not required to exercise jurisdiction of plaintiff's remaining claims. *E. g., Dutta v. Clan Grahan,* 528 F.2d 1258, 1260 (4th Cir. 1975). Nevertheless, the district court should have heard plaintiff's Jones Act claim if an independent basis were found . . . . In *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 921, 26 L.Ed. 252 (1970), and *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), the Supreme Court set out various factors that

guide a court in determining the applicability of the Jones Act. The factors are place of the wrongful act, law of the flag, allegiance or domicile of the injured seaman, allegiance of the defendant shipowner, place of contract, inaccessibility of a foreign forum, law of the forum, and the shipowner's base of operations.

Although the court below cast its decision to decline jurisdiction over the damage claims in terms of *forum non conveniens* it is clear that the teaching of *Rhoditis* and of *Lauritzen* was given full effect. The court recognized that *some* contacts existed between Appellee Andros, the EVGENIA G. and the deceased seaman, on the one hand and this country, on the other hand. However, it specifically found, *inter alia,* that (1) Greek law was the law of the flag, (2) the decedent was a resident and citizen of Greece, and (3) Andros' base of operations was not in the United States. As we have noted heretofore, "[A]mong the various factors set forth in Lauritzen, the most important is the law of the flag." *Southern Cross Steamship Co. v. Firipis,* 285 F.2d 651, 653 (4th Cir. 1960). As in *Bekris v. Greek M/V Aristoteles,* 437 F.2d 219, 220 (4th Cir. 1971), it appears the damage claims asserted in this case "bear no relationship to the United States other than the fact that the case was brought here and personal jurisdiction was obtained here." We are satisfied that in refusing application of the Jones Act the district court committed no error of law or abuse of discretion.

It should be noted that at least in the Fifth Circuit, "strict scrutiny [of seamen's releases] extends to settlements made by relatives of seamen" as to Jones Act claims for injury and death. *See Lewis v. S.S. Baune,* 534 F.2d 1115, 1123 (5th Cir. 1976) *citing Hassan v. A.M. Landry & Son, Inc.,* 321 F.2d 570 (5th Cir. 1963), *cert. denied* 375 U.S. 967, 84 S.Ct. 486, 11 L.Ed.2d 416 (1964). In *Hassan* the personal representative sued, *inter alia,* under the Jones Act in behalf of the widow and minor children of the deceased. The personal representative and the widow, individually and as natural tutrix of the minors, executed releases which had been approved by a state court upon their joint petition. The releases were incorporated into a judgment by the state court. In affirming a summary judgment in favor of the defendant

employer and its insurer in the federal action, the Court observed:

The settlement having been fully and explicitly described to the Louisiana court and having received that court's approval, we think that it meets even the careful scrutiny to which settlements and releases under the Jones Act must be subjected.

*See also Rabbe v. Universe Tankships,* 263 F.Supp. 786, 787 (S.D.N.Y.1966), where the court stated in regard to a settlement of death claims, "[S]eamen, their widows and offspring are the wards of Admiralty and come within the special protection of this Court." *But see Ying Shiue Jyu Fen v. Sanko Kisen,* 1977 A.M.C. 1224, 1230 n.12 (S.D.N.Y.1977). Appellant has not sought to rely on the above authorities which we do not deem controlling here.

## IV.

Since the decision of the district court that insufficiently substantial contacts exist to warrant application of the Jones Act should not be disturbed, we perceive no need to address Appellees' alternative contention that, neither of them being decedent's employer, each is without the scope of potential liability under the Jones Act.

*AFFIRMED.*