Rey CASTILLO, Carlos Abesamis, Lauro Malinas, Emetrio Noble, and Jerry Ramos

v.

SPILIADA MARITIME CORPORATION, Embiricos Shipping Agency, Ltd., and the M/V SPILIADA, en rem.

Civ. A. No. 89-3769.

United States District Court, E.D. Louisiana.

March 9, 1990.

BEER, District Judge.

Defendant Spiliada Maritime Corporation ("Spiliada") filed a Motion for Summary Judgment, or Alternatively, Motion to Stay Proceedings which was heard on February 7, 1990. Spiliada seeks judgment against all the plaintiffs' claims, including claims for wages and penalty wages pursuant to 46 U.S.C. 10313.[1] Plaintiffs responded in their opposition by asserting their own Motion for Summary Judgment, contending that a settlement reached in the Philippines in this matter is not binding as a matter of law. Although plaintiffs' Motion was not properly noticed for hearing, it is properly before this court since Spiliada was granted leave to file a reply memorandum.

I. Facts

Plaintiffs are five Filipino seamen who were employed on the M/V SPILIADA for a contractual period of August 5, 1988 to August 5, 1989. They signed individual employment contracts in the Philippines. These contracts were filed and approved by the Philippine Overseas Employment Agency ("POEA"), an agency within the Philippine Department of Labor, as required by Philippine law. The contracts grant exclusive jurisdiction to resolve any dispute arising from the contract to the POEA and the Philippine Court of Justice. The POEA's rules also state that it has original and exclusive jurisdiction to adjudicate Filipino seamen employment disputes.

The SPILIADA completed four voyages to the United States while plaintiffs were aboard. During the last of these visits, on July 6, 1989, an International Trade Workers Federation ("ITWF") inspector visited the SPILIADA to confer with plaintiffs,[2] who had written to him complaining that their employment contracts had been altered, and that they were not receiving

Chester John Caskey, Baton Rouge, La., for plaintiffs.

Robert Hugh Murphy, New Orleans, La., for defendants.

1. Plaintiffs also seek punitive damages, and claim retaliatory discharge under the Alien Tort Statute, 28 U.S.C. 1350 *et seq.*, "forced repatriation", mental anguish, and special compensatory damages for the threat of lost employment opportunities.

2. The ITWF is an international labor secretariat whose affiliates are labor organizations representing employees engaged in transportation services. ITWF inspectors are responsible for inspecting vessels covered by collective bargaining agreements to ensure compliance with those

proper wages.[3] The next day the ITWF inspector, on behalf of plaintiffs, was unable to reach a resolution with the captain.[4] Plaintiffs were fired, paid the rate Spiliada contended was correct, and were repatriated to the Philippines. They did not consult with their American attorney before their return to the Philippines.

Subsequently, plaintiffs entered a settlement and release in the Philippines with Spiliada. Plaintiffs' American lawyer was not informed about the settlement before it was entered. No representative of the POEA was present, although a representative from a sister agency, the Overseas Workers' Welfare Administration ("OWWA"), was present. Plaintiffs subsequently filed suit in this District.

## II. Parties' Contentions

A. Spiliada contends that summary judgment is warranted since, under applicable Philippine law, the settlement and releases signed by plaintiffs are binding. Alternatively, by the Act of State Doctrine and as a matter of comity, this Court should stay this litigation and defer to the appropriate Philippine forum. Spiliada refutes plaintiffs' contention that they were coerced into the settlement, and contends that the OWWA representative advised plaintiffs regarding the settlement. Spiliada also contends plaintiffs made no statements indicating that they were entering the settlement due to dire economic circumstances.

B. Plaintiffs contend that, pursuant to 46 U.S.C. 10313, this court's jurisdiction over their claims for wages is mandatory. Further, since this court's jurisdiction over the wage claim is mandatory, this court should also maintain jurisdiction over its other claims. In their own Motion for

Summary Judgment, plaintiffs contend the settlement is not binding since they were under dire economic pressures when it was consummated, and since Spiliada denied their request to speak with their American lawyer before signing the settlement, and coerced them into signing the release.

## III. Analysis

Plaintiffs' contention that this court's jurisdiction over this matter is mandatory hinges upon their wage claim, made pursuant to 42 U.S.C. 10313. Subsection (g) of that statute provides penalty wages of two days pay for each day of delay when a seaman proves wages were withheld without sufficient cause. Subsection (i) applies the statute "to a seaman on a foreign vessel when in a harbor of the United States."[5]

Based on the unequivocal language in Section 10313, jurisdiction over a wage claim is mandatory, if it is made in good faith. *Abraham v. Universal Glow, Inc.,* 681 F.2d 451, 453 (5th Cir.1982). Due to the potential for abuse in a rule requiring a court to assume jurisdiction over a seaman's suit whenever a wage claim is asserted, regardless of other considerations, the plaintiff must come forward with evidence of good faith when contacts with the United States are minimal, and the defendant denies liability for the wage claim. *Id., citing Dorizos v. Lemos and Pateras, Ltd.,* 437 F.Supp. 120, 123 (S.D.Ala.1977); G. Gilmore & Black, at 479. Therefore, since Spiliada denies liability for the wage claim, and contacts with the United States are tenuous, this court lacks jurisdiction unless plaintiffs can show that their wage claims are made in good faith.

"Good faith" presents a factual question, *Morewitz v. Andros Compania*

agreements, and to assist seafarers with employment concerns.

**3.** Plaintiffs had secondary grievances regarding food and living conditions.

**4.** Plaintiffs allege the ITWF inspector was shown employment contracts by the captain in which the wage rates had been lowered after they were signed, and which did not match the copies that were on file with the POEA.

**5.** If mandatory jurisdiction is established in federal district court pursuant to 46 U.S.C. 10313, courts generally maintain jurisdiction over the entire matter, even though jurisdiction over the remaining claims might otherwise be denied. *Dutta v. Clan Graham,* 528 F.2d 1258, 1260 (4th Cir.1975); G. Gilmore & Black, *The Law of Admiralty,* 479–80 (2d ed. 1979).

*Maritima, S.A.,* 614 F.2d 379, 381 (4th Cir.1980), which in this context, is an elusive concept. *Gilmore & Black,* at 479. The fact that a wage claim is weak is not a proper basis for finding it is not made with good faith. *Dutta,* 528 F.2d at 1260. However, it is sound judicially to ensure that the claim on which jurisdiction is based is not entirely devoid of any prospect of success. *Morewitz,* 614 F.2d at 382, n. 4.

■ Spiliada first contends, at least implicitly, that plaintiffs filed this suit in bad faith since their employment contracts restricted their recourse to the appropriate Filipino agency and court. This contention must be rejected since the purpose of mandatory jurisdiction under 46 U.S.C. 10313 would be defeated if the parties could contract around it. *Cesar Galon, et al. v. M/V HIRA II, et al.,* No. C–89–888WD (W.D.Wa. Oct. 26, 1989) (Filipino seaman employment contract stipulating disputes resolved in Philippines does not contravene district court's mandatory jurisdiction over wage claims); *see also, Arguelles v. U.S. Bulk Carriers, Inc.,* 408 F.2d 1065, 1071–72 (4th Cir.1969), *aff'd* 400 U.S. 351, 91 S.Ct. 409, 27 L.Ed.2d 456 (1971) (collective bargaining grievance procedure not a mandatory alternative to seeking redress pursuant to seaman wage statutes).

■ Spiliada's main contention, however, is that plaintiffs acted in bad faith since they entered a binding and final settlement, then renounced that settlement, and filed this lawsuit. Spiliada notes that plaintiffs were each paid the equivalent of $5,500 in Philippine currency at settlement, an amount Spiliada contends approximates plaintiffs' demand. In exchange, plaintiffs executed releases absolving Spiliada from further liability. A notary public administered an oath to each plaintiff and confirmed that they were entering the settlement of their own volition, aware of the finality of the settlement, and without duress. Spiliada provides through affidavits that, although plaintiff's American lawyer was not consulted before the settlement, their Filipino attorney was consulted, and advised that a settlement in the Philippines may be in plaintiffs' best interest. Spiliada

also contends that the OWWA representative fully advised plaintiffs at the settlement, and that plaintiffs made no statements indicating that they were entering the settlement due to economic pressures.

Based largely on their own affidavits, which were executed six days after the settlement, plaintiffs contend that they were coerced into the settlement, that their request to speak with their American lawyer was denied, that no one represented them or advised them at the settlement, and that the OWWA representative merely witnessed the settlement. Plaintiffs also provide the affidavit of an attorney with supposed experience before the POEA, who indicates the settlement was not in accord with Philippine law since a POEA representative was not present. Plaintiffs also dispute that the amount received in settlement approximates what Spiliada owes to them. Therefore, plaintiffs conclude that they acted in good faith when they renounced the settlement and filed this lawsuit.

Based upon these affidavits, plaintiffs also move this court to invalidate the releases as a matter of law. Plaintiffs note that subsection (e) of 10313 provides that, *"any court having jurisdiction* may set aside, for good cause shown, the release [by a seaman of wages on discharge] and take such action that justice requires." 46 U.S.C. 10313(e) (emphasis added). Plaintiffs miss the fact that this court's jurisdiction has not been established. Until they make a showing of good faith, this court lacks jurisdiction, *Abraham,* 681 F.2d at 453, and therefore, cannot invalidate the releases.

This court finds that a genuine issue of fact exists regarding whether plaintiffs can show that they acted in good faith in bringing a wage claim pursuant to 46 U.S.C. 10313. The specific and single issue of fact is whether plaintiffs acted in good faith when they entered a settlement, renounced it, and then filed this lawsuit. Based on the parties' affidavits and other exhibits alone, this issue of fact cannot be resolved. Since it is sound judicially to ensure that plaintiffs' wage claim, the one upon which

**54**

this court's jurisdiction is allegedly based, is not entirely devoid of any prospect of success, *see Morewitz*, 614 F.2d at n. 4, this court will hold a evidentiary hearing on that issue, and that issue alone. Unless plaintiffs can show that they acted in good faith in filing this lawsuit at that hearing, this court lacks jurisdiction over their wage claims. *Abraham*, 681 F.2d at 453.

The hearing is set for April 18, 1990 at 2:00 p.m. Plaintiffs may file a memorandum on the specific issue, as stated above, by April 3, 1990. Spiliada may respond by April 10, 1990. Both parties' motions are taken under consideration until after the April 18 hearing.