Martha A. Downs CALLASSO, as Personal Representative of the Estate of William Seaman Smith, Plaintiff,

v.

MORTON & CO., Nicaragua Line Co., and Ariane Shipping Corp., Ltd., Defendants.

No. 03–21136CIVMOORE.

United States District Court, S.D. Florida.

June 15, 2004.

John Heyward Hickey, Hickey and Jones, Miami, FL, Elizabeth Koebel Russo, Russo Appellate Firm, Miami, FL, Clifford A. Kornfield, Miami, FL, for Plaintiff.

Keith Steven Brais, Richard Dennis Rusak, McAlpin & Brais, Miami, FL, for Defendant.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendants Morton & Company ("Morton") and Ariane Shipping Corporation, Ltd's ("Ariane"),[1] Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* ("Motion to Dismiss") (DE # 12). Defendants have also filed a Motion to Dismiss Based Upon the Doctrines of Abstention and *Res Judicata* (DE # 40).

1. On November 6, 2003, default was entered against Defendant Nicaragua Line Company ("Nicaragua Line"), for failure to appear, answer, or otherwise plead to the Plaintiff's Complaint within the time required by law (DE # 32).

2. This section reflects the factual findings contained in the July 20, 2002, order of the Eleventh Judicial Circuit in and for Dade County ("State Court Order"). As explained below, *infra* Section II.A., the Plaintiff is barred under the doctrine of collateral estoppel from re-litigating these factual findings.

UPON CONSIDERATION of the motion, and pertinent portions of the record, this Court enters the following Order.

## I. Background [2]

The Plaintiff, Martha Downs Callasso, brings this wrongful death action under the Jones Act, 46 U.S.C. § 688 *et seq.*,[3] on behalf of the decedent, William Smith. Callasso also brings claims for unseaworthiness based on general maritime law of the United States, and for negligence and unseaworthiness under the Death on High Seas Act, 46 U.S.C. §§ 761–68. Callasso is a Nicaraguan citizen and resident. The Plaintiff has no residence in Florida, and no family members in Florida, and there is no evidence in the record to indicate that the Plaintiff has a residence or family members anywhere else in the United States. As the personal representative of the decedent, Callasso brings this action on behalf of his minor children, all of whom are Nicaraguan citizens and residents.

Smith was hired by Ariane, an Antiguan corporation, to work aboard an Antiguan flagged vessel, the *M/V Transport* ("*Transport*"). Smith entered into his employment contract and joined the ship in Nicaragua. Ariane is not registered to do business in Florida, and has no offices or employees in Florida or anywhere else in the United States.

3. The Act provides, in relevant part:

 Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury ... and in the case of death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain [a similar action] .... Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

The intermediate level operational decisions for the *Transport* are made by Morton, a Florida corporation. Morton acts as a technical manager for the ship while the vessel is under time charter to third parties. The company's duties include locating a suitable Master for the vessel, collecting charter revenue from the time charterer, forwarding the charter revenue to Ariane, arranging for insurance for the vessel, and overseeing minor vessel repairs. Day-to-day operational decisions for the *Transport* were made by the vessel's Master, who also oversees provisioning of the ship and sailing the ship from place to place.

At all material times, the *Transport* was under time charter to Nicaragua Line, a Florida corporation with offices and employees in Florida. Nicaragua Line's principal place of business is Nicaragua. Nicaragua Line had the sole power to select the ports of call for the *Transport*. Smith's death was caused by an accident which occurred on November 4, 2000, on board the *Transport* while the vessel was docked in Nicaragua. The only confirmed eyewitness to the accident is the Chief of the Harbor Master's Office for the Port of Corn Island, Nicaragua. The other potential witness, a crewman on the vessel, is a Nicaraguan citizen. He has since left the ship and is presumed to be living in Nicaragua. Following the accident, Smith received emergency medical care from a Nicaraguan doctor at a Nicaraguan hospital, where he later died. At the time of the accident, eight of the ten crew members/witnesses of the *Transport* were citizens and residents of Nicaragua; the remaining two potential crew member witnesses are domiciled in Colombia. Nine of these crew members were hired in Nicaragua by the Master.

Morton and Ariane moved to dismiss this case based upon the doctrine of *forum non conveniens*. The Defendants claim that the Plaintiff is collaterally estopped from challenging the legal and factual findings of the Florida state court in the previous state court action, and that the instant action should be dismissed for *forum non conveniens*. The Defendants claim that Nicaragua would be a more appropriate forum for the Plaintiff to bring her claims.

## II. Discussion

### A. Collateral Estoppel

■ In the Motion to Dismiss, Defendants argue that the Plaintiff should be precluded, under the doctrine of collateral estoppel, from re-litigating any legal or factual finding made by the Eleventh Judicial Circuit in and for Dade County. Mot. to Dismiss at 5–7. The July 10, 2002 State Court Order dismissed Plaintiff's claims based upon the doctrine of *forum non conveniens*. Mot. to Dismiss at 5.

■ Collateral estoppel, or "issue preclusion," applies when a judgment "[forecloses] relitigation of a matter that has been litigated and decided." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)(alteration in original). "Once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue ..." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980). Issues actually litigated in a state court proceeding are entitled to the same preclusive effect in a subsequent federal suit. *Migra*, 465 U.S. at 83, 104 S.Ct. 892. "Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so ..." *Allen*, 449 U.S. at 96, 101 S.Ct. 411.

■ State law governs whether a state court judgment bars a subsequent

federal diversity action under the doctrine of collateral estoppel. *Precision Air Parts, Inc. v. Avco Corp.,* 736 F.2d 1499, 1503 (11th Cir.1984). The federal standard for applying collateral estoppel principles is identical to the legal standard under Florida law. *Vazquez v. Metropolitan Dade County,* 968 F.2d 1101, 1107 (11th Cir.1992) (stating that the federal standard for collateral estoppel announced in *Precision Air Parts* also supplies the standard as a matter of Florida law). The Court of Appeals for the Eleventh Circuit has established three prerequisites to the application of collateral estoppel: (1) the issue at stake must be identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated in the prior litigation; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. *Precision Air Parts,* 736 F.2d at 1501 (citations and quotations omitted). Further, the party against whom the earlier decision is asserted must have had a full and fair opportunity to litigate the issue in the earlier proceeding. *Id.* at 1504.

### 1. Identical Issues

The *forum non conveniens* analysis utilized in the State Court Order is not identical to the analysis a federal court must undertake when deciding whether to dismiss an action under the doctrine of *forum non conveniens.* In its analysis, the Florida state court focused on the connections between the Plaintiff's suit and the State of Florida. Under federal law, this Court is required to evaluate the connections between the Plaintiff's suit and the entire United States. Further, as argued by the Plaintiff, Resp. at 3, the Florida state court did not undertake a choice of law analysis.

Although the overall analysis required in federal court is geographically broader than the one applied by the Florida courts, and although the Florida court did not first make a choice of law determination, the legal and factual issues essential to the *forum non conveniens* judgment of the Florida court are identical to the issues now before this Court. Therefore, while the Plaintiff is not barred from challenging the ultimate judgment of the state court to dismiss the prior action for *forum non conveniens,* the Plaintiff is barred from challenging the legal and factual issues resolved by the state court.

### 2. Full and Fair Opportunity to Litigate Issues

The Defendants moved to dismiss the Plaintiff's state court action for *forum non conveniens.* The issues were fully litigated; the Florida court heard arguments during two separate hearings, one on May 8, 2002, and one on June 12, 2002. State Ct. Order at 1. The parties also submitted pleadings and memoranda of law to the Florida court.[4] *Id.* Moreover, the Plaintiff appealed the State Court Order, but then voluntarily dismissed the state court action prior to the conclusion of the appeal. Based on the record, this Court finds that the parties fully litigated the issues in the earlier state court action.

### 3. Issues a Critical and Necessary Part of the Prior Judgment

The legal and factual issues decided by the Florida state court were essential to its determination that the state court action should be dismissed for *forum non conveniens.* The Florida court considered the four essential factors in its *forum non conveniens* analysis: (1) the availability and adequacy of the Nicaraguan forum;

---

**4.** In fact, the Plaintiff refers to materials filed in the state court case to support its argu-

ments in its Response to the Motion to Dismiss. Resp. at 2 n. 2.

(2) the relevant private factors that favor the alternate forum; (3) the relevant public factors that favor the alternate forum; and (4) the ability of the plaintiff to reinstate its suit in the alternate forum. State Ct. Order at 3–4. Consideration of these factors were critical and necessary to the state court's judgment that the action should be dismissed.

Based on the foregoing, this Court finds that the Plaintiff is barred by the doctrine of collateral estoppel from challenging the legal and factual findings contained in the State Court Order. Although the Plaintiff is barred from challenging these findings, this Court must now analyze the Defendants' *forum non conveniens* argument under the federal standard, taking into consideration the connections the instant suit has to the entire United States.[5]

**B. Choice–of–Law Analysis**

■ Before this Court can consider whether this action should be dismissed based upon *forum non conveniens,* it must determine whether this case is controlled by the laws of the United States. If American law applies, the case cannot be dismissed for *forum non conveniens. See Szumlicz v. Norwegian America Line, Inc.,* 698 F.2d 1192, 1195 (11th Cir.1983). In *Lauritzen v. Larsen,* the Supreme Court set forth "a contracts-based choice of law analysis" and "set out a number of factors relevant" for the choice of law determination in cases brought under the Jones Act: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured; (4) the allegiance of the defendant shipowner; (5) the place of the contract; (6) inaccessibility

of the foreign forum; and (7) the law of the forum. 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *see also Sigalas v. Lido Maritime, Inc.,* 776 F.2d 1512, 1517 (11th Cir.1985) (discussing *Lauritzen* ). While these factors are not an exhaustive list, "a court must view the case as a whole in order to determine which law can be most fairly applied to govern the contractual relationship." *Id.* at 1517. This Court evaluates the facts of the instant case as applied to each of the relevant choice of law factors.

**1. Place of the Wrongful Act**

"The test of location for the wrongful act or omission, however sufficient for torts ashore, is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate." *Lauritzen,* 345 U.S. at 583, 73 S.Ct. 921. The accident that killed Smith occurred on board the *Transport* while the vessel was docked in Nicaragua. *See* Compl. ¶ 9; Mot. to Dismiss at 8; *see also* State Ct. Order at 2. Although limited in its application, as in *Lauritzen,* "[t]he locality test, for what it is worth, affords no support for the application of American law." 345 U.S. at 584, 73 S.Ct. 921.

**2. Law of the Flag**

"Perhaps the most venerable and universal rule of maritime law relevant to our problem is that which gives cardinal importance to the law of the flag ... the weight given to the ensign overbears most other connecting events in determining the applicable law." *Id.* at 584–85, 73 S.Ct. 921. Further, "all things done on board which affected only the vessel or those

---

**5.** This Court notes that the Plaintiff is barred from claiming that this case has connections to Florida. The Florida state court has already determined that there is an insufficient connection between the state of Florida and the Plaintiff's suit for the state court to retain jurisdiction. Therefore, it logically follows that for this Court to exercise jurisdiction, it would have to find that there is a connection between the Plaintiff's action and the United States, not including Florida.

belonging to her, and did not involve the peace or dignity of the country ... should be left by the local government to be dealt with by the authorities of the nation to which the vessel belonged as the laws of the nation or the interests of its commerce should require ..." *Id.* at 585–86, 73 S.Ct. 921.

Although the Plaintiff argues that the *Transport's* base of operations is in Miami, the Plaintiff ultimately concedes that the vessel is registered in Antigua. *See* Resp. at 7; *see also* Mot. to Dismiss at 8–9. The Florida state court determined that Ariane was not registered to do business in Florida, and had no offices or employees in Florida. State Ct. Order at 2. Since the vessel is an Antiguan flagged ship, this factor weighs against the application of American law.

### 3. Allegiance or Domicile of the Injured

"[E]ach nation has a legitimate interest that its nationals and permanent inhabitants be not maimed or disabled from self-support." *Lauritzen,* 345 U.S. at 586, 73 S.Ct. 921. In some cases, American "courts have been prompted to apply the Jones Act by that fact that the wrongful act or omission alleged caused injury to an American citizen or domiciliary." *Id.*

Neither Smith nor the Plaintiff is a citizen or domiciliary of the United States. Smith was a Scottish citizen domiciled in Nicaragua. *See* Resp. at 14; Mot. to Dismiss at 9; *see also* State Ct. Order at 1. The Plaintiff and the minor children she represents are citizens and residents of Nicaragua. Further, although the Plaintiff claims that Smith's voyage commenced from Miami, Resp. at 14, even if this Court were to accept this fact as true,[6] Smith's presence in the United States "was transitory and created no such national interest

in, or duty toward, him as to justify intervention of the law of one state on the shipboard of another." *Lauritzen,* 345 U.S. at 587, 73 S.Ct. 921. Therefore, this factor also weighs against the application of American law.

### 4. Allegiance of the Defendant Shipowner

The *Transport* is owned by Ariane, an Antiguan corporation. Compl. ¶ 14; Mot. to Dismiss at 9; *see also* State Ct. Order at 1. However, "as the practice of flags of convenience has grown, 'our courts on occasion have pressed beyond the formalities of more or less nominal foreign registration to enforce against American shipowners the obligations which our law places on them.'" *Sigalas,* 776 F.2d at 1517 (citing *Lauritzen,* 345 U.S. at 587, 73 S.Ct. 921). In its Complaint, the Plaintiff argues that Ariane is a foreign corporation which does business in Florida through its agent, Morton, a Florida corporation. Compl. ¶¶ 7, 8, 14. Plaintiff also claims that the *Transport* was under charter by Nicaragua Line, a Florida corporation. Compl. ¶¶ 6, 13; *see also* Resp. at 7–14.

As discussed above, under the doctrine of collateral estoppel, the Plaintiff cannot re-litigate the factual determinations made by the Florida state court. That court determined that Ariane is not registered to conduct business in Florida and has no offices or employees in Florida. State Ct. Order at 1. The Florida state court determined that while intermediate level operational decisions are made by Morton, a Florida corporation, day-to-day operational decisions for the *Transport* are made by the vessel's Master. *Id.* at 2. Further, although the *Transport* was under time charter to Nicaragua Line, a Florida corporation, the state court determined that

---

6. The Florida state court determined that Smith joined the ship in Nicaragua, and the

Plaintiff is collaterally estopped from arguing otherwise. State Ct. Order at 1.

Nicaragua Line's principal place of business was Nicaragua. *Id.* at 2.

Considering all the facts, this Court is not convinced that the "allegiance" of Ariane, the Defendant shipowner, is to the United States. Therefore, this factor weighs against applying American law.

### 5. Place of the Contract

The Supreme Court has determined that "the place of contract is [not] a substantial influence in the choice between competing laws to govern maritime tort." *Lauritzen,* 345 U.S. at 589, 73 S.Ct. 921. This factor is "entitled to little weight because a 'seaman takes his employment, like his fun, where he finds it'" *Sigalas,* 776 F.2d at 1517 (citing *Lauritzen,* 345 U.S. at 587, 73 S.Ct. 921).

Although this factor is given little weight, this Court notes that the place of contract is Nicaragua, which weighs against applying American law. As mentioned above, the Plaintiff contends that Smith joined the *Transport* in Miami. Resp. at 14. The Florida state court, however, determined that Smith entered into his employment contract and joined the ship in Nicaragua. State Ct. Order at 1. Therefore, the Plaintiff cannot re-litigate the "place of contract" issue. Here, the "place of contract" weighs against applying American law.

### 6. Inaccessibility of the Foreign Forum

While the inaccessibility of the foreign forum "might be a persuasive argument for exercising a discretionary jurisdiction to adjudge a controversy ... it is not persuasive as to the law by which it shall be judged." *Lauritzen,* 345 U.S. at 589–90, 73 S.Ct. 921. Moreover, the Florida state court has determined that Nicaragua is an available and adequate forum, and is "satisfied that the Nicaraguan courts will not suffer their own citizens to have no forum to redress their injuries..." State

Ct. Order at 3. Further, the Defendants have stipulated to personal jurisdiction before a competent tribunal in Nicaragua, and waived any time limitation defenses. Mot. to Dismiss at 9–10. Nicaragua is an accessible foreign forum, thus weighing against the application of American law.

### 7. Law of the Forum

In *Lauritzen,* the plaintiff argued that "since an American forum has perfected its jurisdiction over the parties and defendant does more or less frequent and regular business within the forum state, it should apply its own law to the controversy between them." 345 U.S. at 590, 73 S.Ct. 921. The Supreme Court determined, however, that "[t]he 'doing business' which is enough to warrant service of process may fall quite short of the considerations necessary to bring extraterritorial torts to judgment under our law," because "[u]nder [plaintiff's] contention, all that is necessary to bring a foreign transaction between foreigners in foreign ports under American law is to be able to serve American process on the defendant." *Id.*

Thus, this factor is given little deference because "[t]he purpose of a conflict-of-laws doctrine is to assure that a case will be treated in the same way under the appropriate law regardless of the fortuitous circumstances which often determine the forum." *Id.* at 591, 73 S.Ct. 921.

### 8. Shipowner's Base of Operations

The list of seven choice of law factors expounded in *Lauritzen* is not exhaustive or meant to be applied mechanically to the facts of each case. *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 309, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). "[T]he shipowner's base of operations is another factor of importance in determining whether the Jones Act is applicable; and there well may be others." *Id.* The operational con-

tacts of both the ship and its owner are to be considered in the choice of law analysis. *Id.* at 310, 90 S.Ct. 1731.

Based on the factual conclusions reached by the Florida state court, the shipowner Ariane is not registered to do business in Florida, and does not have offices or employees in Florida. The *Transport's* home port is St. Johns, Antigua. State Ct. Order at 2. The only connection Ariane had to the United States was through Morton, which made intermediate level operational decisions, and through Nicaragua Line, which chartered the *Transport*. *Id.* Although Nicaragua Line is a Floridian corporation, its principal place of business is in Nicaragua. *Id.* Further, day-to-day operations for the *Transport* were made by the vessel's Master, not Morton. Ariane and the *Transport's* connections to the United States are tenuous at best. Ariane does not have a substantial base of operations in the United States, and in fact, the majority of important contacts in this case are elsewhere.

Considering all the factors weighing against the application of American law, this Court finds that Ariane and the *Transport's* base of operations, even assuming such base is the United States, to be unpersuasive in the overall choice of law analysis. However, in making the choice of law determination, "our task is not to weigh or balance present against absent contacts, but merely to determine whether the contacts which are present are substantial." *Fantome, S.A., v. Frederick*, No. 02–10890, at 13, 2003 WL 23009844, *4 (11th Cir. Jan. 24, 2003) (order reversing and remanding the district court's order granting dismissal) (quoting *Moncada v. Lemuria Shipping Corp.*, 491 F.2d 470, 472 (2d Cir.1974)). Here, none of the seven relevant *Lauritzen* factors establish contacts sufficient to determine that American law is applicable. "Our responsibility in conducting the *Lauritzen*–

*Rhoditis* choice of law analysis is to 'examin[e] the substance of the connections for the purpose of determining the reasonableness of applying American law under the circumstances.'" *Id.* at *4 (quoting *Neely v. Club Med Mgmt. Servs., Inc.*, 63 F.3d 166, 194 (3d Cir.1995) (en banc) (alteration in original)). Given the circumstances in this case, this Court finds that it is not reasonable to apply American law. Now, this Court considers whether this case should be dismissed based on the doctrine of *forum non conveniens*.

### C. *Forum Non Conveniens*

 *Forum non conveniens* is a common law doctrine that permits a court to decline jurisdiction over a case, even if personal jurisdiction and venue are otherwise proper, when it appears that the convenience of the parties and court and the interests of justice indicate that the action should be tried in another forum. *See, e.g., Am. Dredging Co. v. Miller*, 510 U.S. 443, 448, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 250, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The Florida Supreme Court has adopted federal *forum non conveniens* law as the appropriate standard for Florida state courts. *Kinney Sys., Inc. v. Cont'l Ins. Co.*, 674 So.2d 86, 93 (Fla.1996).

 In the present case, however, the Eleventh Judicial Circuit in an of Dade County applied the *forum non conveniens* standard in a manner slightly different from how federal courts have applied it. In addressing the *forum non conveniens* issue, the Florida state court focused on Florida's connection to and interest in the case. Federal courts considering *forum non conveniens* do not focus on the connection between the case and a particular state, but rather on the connection on the case to the United States as a whole. *See La Seguridad v. Transytur Line*, 707 F.2d

1304, 1308 (11th Cir.1983) (focusing on the relation between the claims and issues raised by the plaintiffs and the United States). Unlike a federal court, the Florida state court dismissed Callasso's lawsuit without considering whether the suit had any important connections with a United States jurisdiction besides Florida. Therefore, this Court evaluates the Defendants' Motion to Dismiss under the federal standard, evaluating the connections between the Plaintiff's suit and the entire United States.

The Eleventh Circuit Court of Appeals has directed federal district courts to employ the following methodology in *forum non conveniens* cases:

> As a prerequisite, the court must establish whether an adequate alternative forum exists which possesses jurisdiction over the whole case. Next, the trial judge must consider all relevant factors of *private* interest, weighing in the balance a strong presumption against disturbing plaintiff's initial forum choice. If the trial judge finds this balance of private interests to be in equipoise or near equipoise, he must then determine whether or not factors of *public* interest tip the balance in favor of a trial in a foreign forum. If he decides that the balance favors such a foreign forum, the trial judge must finally ensure that plaintiffs can reinstate their suit in the alternative forum without undue inconvenience or prejudice.

 *Id.* at 1307 (quoting *Pain v. United Technologies Corp.*, 637 F.2d 775, 784–85 (D.C.Cir.1980)). The defendants have the burden of persuasion as to all elements of a *forum non conveniens* motion, and must demonstrate: (1) an adequate alternative forum is available; (2) that the private factors weigh in favor of dismissal;[7] (3) that the public factors weigh in favor of dismissal;[8] and (4) that there would be no inconvenience or prejudice to the plaintiff in filing in the foreign forum. *See Piper Aircraft*, 454 U.S. at 255–62, 102 S.Ct. 252; *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 (11th Cir.1997)..

1. Availability and Adequacy of the Nicaraguan Forum

 The Florida state court determined that the Nicaraguan courts are an available and adequate forum, a finding that the Plaintiff cannot re-litigate. Availability and adequacy warrant separate consideration. *Leon v. Millon Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir.2001) (citing *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1283–84 (11th Cir.2001)). "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Id.* at 1311 (citing *Piper Aircraft*, 454 U.S. at 252 n. 22, 102 S.Ct. 252). The alternate forum prong of the *forum non conveniens* analysis generally "will be satisfied when the defendant is amenable to

---

**7.** The private interest factors include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses and costs of obtaining unwilling witnesses; (3) the probability of a view of the premises, if appropriate to the action; (4) the enforceability of a judgment if obtained; and (5) all other practical problems that make a trial of the case easy, expeditious, and inexpensive. *See In re Air Crash Disaster Near New Orleans, La.*, 821 F.2d 1147 (5th Cir.1987).

**8.** The public interest factors include: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law governing the action; (4) the avoidance of unnecessary problems in conflicts of law or in the application of foreign law; and (5) the unfairness of burdening citizens in an unrelated forum with jury duty. *See In re Air Crash*, 821 F.2d at 1147.

process in the other jurisdiction." *Piper Aircraft*, 454 U.S. at 255 n. 22, 102 S.Ct. 252. Because the Defendants have consented to jurisdiction of the Nicaraguan courts, their amenability to suit there is not an issue.

A defendant must also demonstrate that the alternative forum is adequate. While an alternative available forum requirement normally "will be satisfied when the defendant is 'amenable to process' in the other jurisdiction ... In rare circumstances ... where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative...." *Id.* In *Piper Aircraft*, the Supreme Court noted that a remedy is inadequate when it amounts to "no remedy at all." *Id.* at 254, 102 S.Ct. 252. Further, "[c]ourts have been strict about requiring that defendants demonstrate that the alternative forum offers at least some relief." *Id.* at 1311 (citing *Mercier v. Sheraton Int'l, Inc.*, 935 F.2d 419, 425 (1st Cir. 1991)). But, " 'an adequate forum need not be a perfect forum,' and courts have not always required that defendants do much to refute the allegations of partiality and inefficiency in the alternative forum." *Id.* (citing *Satz*, 244 F.3d at 1283). "Some inconvenience or the unavailability of beneficial litigation procedures similar to those available in the federal district courts does not render an alternative forum inadequate." *Borden, Inc. v. Meiji Milk Prods. Co.*, 919 F.2d 822, 829 (2d Cir.1990) (quotation omitted).

As the Florida state court previously opined, the remedies available to the Plaintiff in Nicaragua are not "clearly unsatisfactory," and do not amount to "no remedy at all."

### 2. Private Factors

■■■■ "Relevant private factors include the relative ease of access to sources of proof, ability to obtain witnesses, and 'all other practical problems that make trial of a case easy, expeditious and inexpensive.' " *Republic of Panama*, 119 F.3d at 952 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The Florida state court determined that the private interest factors weigh in favor of a Nicaraguan forum. State Ct. Order at 4. The state court reasoned that "virtually all witnesses [are] in Nicaragua, the accident [took] place in Nicaragua, and the plaintiffs [are] residents and citizens of Nicaragua ... all of the documentation and testimony would likely be in Spanish; access to evidence and sites would be in Nicaragua, and the practicalities and expenses associated with the litigation would favor Nicaragua." *Id.* at 4.

■■■■ A plaintiff's choice of forum is usually accorded deference, particularly where the forum is the defendant's home forum. However, foreign plaintiffs litigating in the United States are entitled to "less deference" in their forum choice. *See Leon*, 251 F.3d at 1310; *Piper Aircraft*, 454 U.S. at 256, 102 S.Ct. 252; *La Seguridad*, 707 F.2d at 1308 n. 7. "[B]alancing private interests requires determining the convenience of the parties, affording domestic plaintiffs 'a strong presumption' that their forum choice is sufficiently convenient, and a weaker presumption applying in cases brought by foreign plaintiffs." *Leon*, 251 F.3d at 1311 (citing *Piper*, 454 U.S. at 256, 102 S.Ct. 252).

As the Florida state court determined, the private factors weigh in favor of dismissal.

### 3. Public Factors

■■■■ The Florida state court did not reach the issue of whether the public interest factors favor a trial in Florida or an

alternate forum.[9] State Ct. Order at 4. Therefore, this Court must consider the public interests, including the "administrative difficulties stemming from court congestion, the interest in having local controversies decided in their home forum and the interest in having laws determined by their home tribunal." *See id.* at 1310 (citation and quotations omitted). "Relevant public interest factors include the sovereigns' interest in deciding the dispute, the administrative burdens posed by trial, and the need to apply foreign law." *Republic of Panama*, 119 F.3d at 953. "[H]earing cases that have no interest to the United States would exacerbate docket congestion, would impose costs on the community in terms of judicial resources and jury duty, would foster the need to 'untangle problems of conflicts of laws' and to decide cases 'in law foreign' to the court, and would conflict with the general interest in having localized interest decided at home." *Sigalas*, 776 F.2d at 1519 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)).

Nicaragua's interest in deciding the dispute is greater than the United States' interest. "There is 'a local interest in having localized controversies decided at home.'" *Piper Aircraft*, 454 U.S. at 260, 102 S.Ct. 252 (quoting *Gilbert*, 330 U.S. at 509, 67 S.Ct. 839). A Nicaraguan resident was killed in on an Antiguan ship in a Nicaraguan port. A Nicaraguan plaintiff brought this suit on behalf of the decedent's minor children, who are Nicaraguan citizens and residents. The only witnesses are Nicaraguan, and a Nicaraguan doctor and hospital treated Smith. Further, there is a strong possibility that this Court would have to apply Nicaraguan law to decide this case.[10]

The only connection this case has to the United States is the two Floridian defendants, Morton and Nicaragua Line. The Florida state court concluded that this fact does not sufficiently connect the Plaintiff's claims to Florida for the state court to hear this case. This Court cannot conclude that there is a sufficient connection between this case and the United States for this Court to hear the case, as there is no evidence of a connection beyond these two defendants.

Thus, the public factors weigh in favor of dismissal.

### 4. Inconvenience/Prejudice to Plaintiff in Foreign Forum

■ Finally, this Court must consider whether it would be possible to reinstate the case in Nicaragua without prejudice or inconvenience to the Plaintiff. The Defendants have stipulated to personal jurisdiction before a competent tribunal in Nicaragua and waived any time limitation defenses. Mot. to Dismiss at 9–10. There is no inconvenience or prejudice to the Plaintiff if this action is brought in Nicaragua; the Plaintiff is a Nicaraguan citizen and resident, virtually all witnesses are in Nicaragua, the accident took place in Nicaragua, and access to other evidence

---

9. The Florida court did not find, however, that trying the case in Florida would be an unfair burden upon the taxpayers of this community. State Ct. Order at 4.

10. This Court notes that the Defendants' Motion to Dismiss Based Upon the Doctrines of Abstention and *Res Judicata* (DE # 40) claims that the Plaintiff has already been awarded money for the wrongful death of Smith in a Nicaraguan court. Mot. to Dismiss Based Upon the Doctrines of Abstention and *Res Judicata* at 2. In the Response, the Plaintiff claims that this Nicaraguan judgment was procedurally flawed. *See* Resp. in Opposition to Mot. to Dismiss Based Upon the Doctrines of Abstention and *Res Judicata* (DE # 47). While the parties ask this Court to resolve these issues of Nicaraguan law, it is more appropriate for these issues to be decided by the Nicaraguan courts.

and sites would be in Nicaragua. As the Florida court noted, "Nicaraguan courts will not suffer their own citizens to have no forum to redress their injuries simply because a matter is referred to them by a United States Court under a doctrine of *forum non conveniens.*" State Ct. Order at 3.

III. Conclusion

The Plaintiff has not met her burden of producing sufficient evidence that Nicaragua is an inadequate forum. The Defendants have shown that Nicaragua is an available forum and that both the public and private factors weigh in favor of dismissal. Therefore, it is

ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss Under the Doctrine of *Forum Non Conveniens* (DE # 12) is GRANTED. It is further

ORDERED AND ADJUDGED that the Defendants' Motion to Dismiss Based Upon the Doctrines of Abstention and *Res Judicata* (DE # 40) is DENIED AS MOOT. All other pending motions are DENIED AS MOOT. This case is CLOSED.