**LISA, S.A., a Panamanian corporation, Plaintiff,**

v.

**Dionisio GUTIERREZ MAYORGA, et al., Defendants.**

**No. 02–21931 CIV MOORE.**

United States District Court,
S.D. Florida.

July 18, 2006.

⚖45

Juan J. Rodriguez, Esq., J. Rodriguez & Associates, P.A., Coral Gables, Jeffrey B. Shapiro, Esq., Hilda Piloto, Esq, Arnstein & Lehr, LLP, Miami, Bruce W. Sanford, Esq., Mark A. Cymrot, Esq., Baker & Hostetler, LLP, Washington, DC, J. Raul Cosio, Esq., Holland & Knight LLP, Miami, for Plaintiff.

Jose I. Astigarraga, Edward H. Davis, Jr., Edward M. Mullins, Annette C. Escobar, Astigarraga Davis Mullins & Grossman, P.A., Miami, for Currently Served Defendants.

Brian Stack, Esq., Robert Harris, Stack Fernandez, Miami, Counsel for Defendants Lemur Investments Ltd. and Fennec Fox Ltd.

### ORDER

MOORE, District Judge.

THIS CAUSE came before the Court upon Currently Served Defendants' Motion to Dismiss for *Forum Non Conveniens* (DE # 485).

UPON CONSIDERATION of the motion and all exhibits, affidavits, and replies in support thereof, as well as Plaintiff's

Response in Opposition to Defendants' Motion to Dismiss Complaint for *Forum Non Conveniens* (DE # 618), and all exhibits and affidavits submitted in support thereof and being otherwise fully advised in the premises, the Court enters the following Order.

## I. Background

This action arises out of an alleged fraud perpetrated by numerous corporate insiders of a Guatemalan poultry production company. In the mid 1960s, Juan Arturo Gutierrez ("Arturo"), and two of his siblings, Dionisio and Isabel, formed a company in Guatemala called Avicola Villalobos ("Avicola"). Compl. ¶ 81. During the 1970s, Avicola expanded its business, to become a "fully integrated set of companies engaged in the production of poultry, beginning with the production of chicken hatchlings all the way through the sale and distribution of processed chicken to retail outlets." *Id.* at ¶ 82. This included a poultry production plant in El Salvador and a chain of fried chicken restaurants throughout Central America. *Id.* at ¶ 83. In 1982, Arturo left the company and turned his control over to his nephews. *Id.* at ¶ 84. From that point to the present, each of Lisa, S.A. ("Lisa" or "Plaintiff"), Inversiones Truchu, S.A. ("Truchu"), San Cristobal Corporation, Ltd. ("San Cristobal") and Villamorey, S.A. ("Villamorey") owned 25% of Avicola. *Id.* at ¶ 85. The Complaint alleges that "within a few years of gaining control of the day-to-day operations of Avicola, Defendants Juan Luis and Dionisio, together with the Executives, embarked on a systematic scheme to defraud Lisa of its share of Avicola's profits by engaging in illegal and fraudulent mechanisms designed to siphon cash from Avicola for the Individual Defendants' personal use." *Id.* at ¶ 88. Two of these alleged schemes involved "off the books" cash sales of live chickens, chicken manure, eggs and oranges, which were then hidden from Plaintiff and deposited in bank accounts in Guatemala in the names of corporate entities or individuals (the "Pollos Vivos Scheme" and "The Los Cedros Scheme"). *Id.* at ¶¶ 90–91. This cash was then allegedly moved from the Guatemalan bank accounts to bank accounts in Miami, where the money was "converted to real and personal property and also used to perpetrate the Individual Defendants' racketeering activities." *Id.* at ¶¶ 92–93. The Individual Defendants allegedly created "at least thirty-four foreign corporations and seven Florida corporations" (the "Shell Company Defendants") as part of this racketeering effort. *Id.* at ¶ 94. The Complaint alleges that these Shell Company Defendants "maintain at least fifty separate banking and investment accounts in at least nine different banks and brokerages located in Florida ... [T]hese accounts are used to move millions of dollars into and within Florida each month. The Shell Company Defendants also own several multi-million dollar residences in Florida ... [and] own or lease several multi-million dollar aircraft." *Id.*

The Complaint alleges seven causes of action, including violations of the Racketeering Influenced and Corrupt Organizations statute ("RICO"), conspiracy to violate RICO, computer fraud, civil conspiracy, fraud and breach of fiduciary duty. Defendants moved to dismiss on multiple grounds. This instant Order will only address Defendants' Motion to Dismiss for *Forum Non Conveniens*.

## II. Standard of Review

A motion to dismiss for failure to state a claim merely tests the sufficiency of the complaint; it does not decide the merits of the case. *Milburn v. United States,* 734 F.2d 762, 765 (11th Cir.1984). On a mo-

tion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept the factual allegations as true. *SEC v. ESM Group, Inc.*, 835 F.2d 270, 272 (11th Cir.1988). Further, the Court should not grant a motion to dismiss "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (citations omitted); *South Fla. Water Mgmt. Dist. v. Montalvo*, 84 F.3d 402, 406 (11th Cir.1996). Specifically, "[i]t is a well-settled principle of law that a complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on *any* possible theory." *Bowers v. Hardwick*, 478 U.S. 186, 201–02, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986) (Blackmun, J., dissenting) (quotations omitted); *see Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir.1997). Nonetheless, to withstand a motion to dismiss, it is axiomatic that the complaint must allege facts sufficiently setting forth the essential elements of a cause of action.

*III. Discussion*

■ A Complaint is appropriately dismissed on *forum non conveniens* grounds when the moving party demonstrates that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. *Leon v. Millon Air Cargo, Inc.*, 251 F.3d 1305, 1311 (11th Cir.2001); (citing *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 951 (11th Cir.1997); *C.A. La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th

Cir.1983)). Moreover, "balancing private interests requires determining the convenience of the parties, affording domestic plaintiffs 'a strong presumption' that their forum choice is sufficiently convenient ... and a weaker presumption applying in cases brought by foreign plaintiffs." *Id.* (citing *Piper Aircraft v. Reyno*, 454 U.S. 235, 256, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981)).

*A. Availability and Adequacy of the Guatemalan Forum*

■ "A defendant has the burden of persuasion as to all elements of a *forum non convienens* motion, including the burden of demonstrating that an adequate alternative forum is available." *Leon*, 251 F.3d at 1311 (citing *Republic of Panama*, 119 F.3d at 951). "Availability and adequacy warrant separate consideration." *Id.*

■ "The alternative forum prong of the analysis generally will be satisfied when the defendant is amenable to process in the other jurisdiction." *Satz v. McDonnell Douglas Corp.*, 244 F.3d 1279, 1282 (11th Cir.2001) (internal citations and quotations omitted); *Callasso v. Morton & Co.*, 324 F.Supp.2d 1320, 1330–31 (S.D.Fla. 2004) (forum is "available" when defendant consents to jurisdiction there). The Defendants here have stipulated that "if this Court dismisses this action in favor of Guatemala, they will submit themselves to the jurisdiction of the Guatemalan courts." Defendant's Motion to Dismiss for *Forum Non Conveniens* ("Def.Motion"). at 11. Plaintiff asserts that this is insufficient. Plaintiff argues that Defendants cannot make a forum available simply by "submitting to the jurisdiction of Guatemalan courts." Plaintiff's Response in Opposition to Defendants' Motion to Dismiss for *Forum Non Conveniens* ("Pl.Response"), at 7. To that end, Plaintiff submits affidavits

claiming that mere submission to a Guatemalan court does not automatically confer competence to the Guatemalan court to entertain the case. *See* Affidavit of Rodrigo Vielmann de Leon, Ex. I at ¶ 14; Affidavit of Maria Luisa Beltranena de Padilla, Ex. J at ¶¶ 5–6, 11–12. The Court finds Plaintiff's argument unavailing. In cases such as this, the Court of Appeals has "approved of conditional dismissals, in which the district court dismisses the case only if the defendant waives jurisdiction and limitations defenses, and only if it turns out that another court ultimately exercises jurisdiction over the case." *Ford v. Brown*, 319 F.3d 1302, 1310 (11th Cir. 2003) (citing *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1430 (11th Cir. 1996)). The Court further noted that "[w]e never indicated that a defendant must have an affidavit from a lawyer in the foreign jurisdiction predicting that the foreign tribunal will ultimately assert jurisdiction over the case and recognize any limitations waiver ... Since the district court's dismissal is conditional, it may reassert jurisdiction in the event that the foreign court refuses to entertain the suit .... There would be little point in approving of this device while simultaneously requiring proof that the foreign jurisdiction will reach the merits of the case." *Id.* at 1310–11 (finding that the district court erred in finding the forum unavailable simply because Defendants did not present evidence indicating that Hong Kong courts would ultimately accept waivers of jurisdiction and limitation defenses); *see also Schertenleib v. Traum*, 589 F.2d 1156, 1163 (2d Cir.1978) ("further inquiry into the foreign jurisdictional law *really* is needless since it is so easily obviated by the use of the typical conditional dismissal device"). Accordingly, the Court finds that Guatemala is an "available" forum, as Defendants have consented to jurisdiction there.

▮ Defendants next carry the burden of proving the adequacy of Guatemala as an alternative forum. "An adequate forum need not be a perfect forum." *Satz*, 244 F.3d at 1283. The Supreme Court has noted that dismissal is not proper where "the remedy provided by the alternative forum is so clearly inadequate or unsatisfactory that it is no remedy at all." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). Moreover, while "the argument that the alternative forum is too corrupt to be adequate does not enjoy a particularly impressive track record," extreme inefficiency or partiality could cause this Court to find inadequacy. *Leon*, 251 F.3d at 1311–12 (quoting *Eastman Kodak Co. v. Kavlin*, 978 F.Supp. 1078, 1084 (S.D.Fla.1997)). While defendants have the ultimate burden of persuasion, the forum will be found adequate unless "the plaintiff has substantiated his allegations of serious corruption or delay." *Leon*, 251 F.3d at 1312.

▮ The Plaintiff argues that it could not pursue a number of its claims under Guatemalan law. *See* Pl. Response at 9–10. The Plaintiff insists that the issue is whether it could "bring in Guatemala the claims it has brought in this case against all the named defendants." *Id.* (citing *Perusahaan Umum Listrik Negara Pusat v. M/V Tel Aviv*, 711 F.2d 1231, 1238 (5th Cir.1983)). The Fifth Circuit held in *Perusahaan* that "in the special case of a collision on the high seas between parties of different nationalities, a 'remedy might be altogether lost' if plaintiff loses his in rem jurisdiction over defendant." *Id.* at 1238. Nonetheless, the Court held that dismissal for *forum non conveniens* was appropriate. *Id.* at 1242–43. In any event, the Plaintiff has presented no evidence that its remedy would be "altogether lost" in the

instant action, and the possibility of Plaintiff being deprived of *some* relief is not sufficient to find that the Guatemalan forum is inadequate. *See Republic of Panama v. BCCI Holdings S.A.,* 119 F.3d 935, 952 (11th Cir.1997) ("Accordingly, the three circuits that have considered this issue have concluded that a plaintiff's inability to assert a RICO claim in the foreign forum does not preclude *forum non conveniens* dismissal") (citing *Lockman Foundation v. Evangelical Alliance Mission,* 930 F.2d 764, 769 (9th Cir.1991); *Kempe v. Ocean Drilling & Exploration Co.,* 876 F.2d 1138, 1143–44 (5th Cir.1989); *Transunion Corp. v. PepsiCo. Inc.,* 811 F.2d 127, 129 (2d Cir.1987)); *see also Polanco v. H.B. Fuller Co.,* 941 F.Supp. 1512, 1526 (D.Minn.1996) ("Adequacy of the alternative forum does not require equivalence of result, but merely the existence of some meaningful remedy").

The Plaintiff next contends that the Guatemalan court system is inadequate because "its courts have been found by the United States State Department to be corrupt, inefficient, and subject to the intimidation of judges and witnesses." Pl. Response at 10. In support of this claim, Plaintiff submits an affidavit by Professor Michael Gordon that buttresses this contention. *See* Pl. Response, Ex. M, Aff. of Michael Wallace Gordon. Defendants respond with their own affidavit, also from an expert on the Guatemalan judiciary, which attests that "the Guatemalan judicial system exhibits the functional adequacies necessary to assure that a case such as this one can be handled with fundamental equity and transparency." Def. Reply, Ex. 2, Aff. of Brian Leo Tracy, at ¶ 7. Indeed, every court that has addressed the adequacy of Guatemala as a forum, has determined that it is an adequate forum. *See, e.g., Polanco,* 941 F.Supp. at 1526; *Kies-*

*wetter v. Chiquita Brands Companies North America, Inc.,* 1992 WL 55183 (E.D.La.1992); *Bolanos v. Gulf Oil Corp.,* 502 F.Supp. 689 (W.D.Pa.1980). Furthermore, Plaintiff has filed dozens of lawsuits in Guatemala relating to the instant action, and is represented by a prestigious Guatemalan law firm. Def. Reply, Ex. 2, Aff. of Brian Leo Tracy, at ¶ 28. As one of Defendants' affiants states in his declaration, "[t]he willingness and frequency of complaints brought by Plaintiff provide ample indication that it has at least the same level of confidence in the Guatemalan judicial system as do I." *Id.* at ¶ 28. In spite of Plaintiff's general claims of corruption within the Guatemalan judiciary, the Court finds that Plaintiff has not adequately substantiated its claims of corruption. As the Court of Appeals held in *Leon* when assessing the adequacy of an Ecuadorian court: "While the logistical and financial problems facing the Ecuadorian courts are undoubtedly substantial, the Plaintiffs have not made a sufficient showing that such problems would preclude the fair and reasonably expeditious adjudication of the ... issues presented by the pending case." *Leon,* 251 F.3d at 1314. Accordingly, the Court finds that Guatemala is an adequate forum.

## B. *Private and Public Interests*

 The Court must next weigh the so-called "private and public interests" in litigating this case in this district as opposed to Guatemala. "Private interests" include "ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses ... and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055

(1947); *see also Satz*, 244 F.3d at 1283 (same). Although there is normally a strong presumption that the plaintiff has chosen a sufficiently convenient forum, this presumption weakens when, as in this case "the plaintiff is a foreigner litigating far from home." *Leon*, 251 F.3d at 1315 (citing *C.A. La Seguridad*, 707 F.2d at 1308, n. 7).

#### 1. Private Interests

■ "Perhaps the most important 'private interest' of the litigants is access to evidence." *Ford*, 319 F.3d at 1308. The Plaintiff argues that "[t]his is a money laundering case, pure and simple, where the entire laundering operation occurs in Miami banks." Pl. Response at 13. The Plaintiff continues by noting that the bank records are located in Florida, as well as a host of other documents relevant to Plaintiff's allegations of money laundering. *Id.* at 13–14. Furthermore, Plaintiff argues that there are a number of potential witnesses located in Miami. *Id.* at 15–16. The Court disagrees. Contrary to Plaintiff's attempts to spin it otherwise, this case is rooted in an alleged fraud that was perpetrated in Guatemala. Plaintiff is a Panamanian corporation. Each of the 17 individual defendants are residents of Guatemala. Of the 42 alleged "Shell Corporate Defendants," 32 are from Guatemala, Panama, Bermuda, the Bahamas and the British Virgin Islands. According to the Complaint, the Pollos Vivos and Los Cedros Schemes, aptly given Spanish names, involved the sale of live chickens and chicken by-products in Guatemala. Compl. ¶¶ 90–91. These cash payments, made in Guatemala, were deposited and maintained off the books, in Guatemalan bank accounts. *Id.* Apparently, much of the cash was then deposited in bank accounts in Miami, among other places, at a later time. *Id.* ¶¶ 96–98. In light of these allegations, it comes as no surprise that the vast majority of witnesses and documents concerning the alleged fraud, reside in Guatemala. *See* Def. Motion, Ex. 52, Aff. of Edwin Antonio Posadas Alburez, at ¶¶ 5–9. According to the Affidavit of Edwin Antonio Posadas Alburez, the Budget and Accounting Information Coordinator of Defendant Multi–Inversiones, one of the Avicola companies, each of the 19 Avicola businesses is located in Guatemala, all of the corporate assets are located in Guatemala, each of the 3,500 Avicola employees reside in Guatemala, and all of the corporate and business records prepared and maintained by the Avicola companies are located in Guatemala and written exclusively in Spanish. *Id.* Indeed, the primary language of all of the individual Defendants and of the officers and directors of the Corporate Defendants is Spanish. *See* Def. Motion, Exs. 1–55 (Defendants filing 55 affidavits translated from Spanish to English). As the Defendants correctly point out. it appears the only witnesses located in Florida are the record custodians of various United States banks where Plaintiff claims Defendants deposited some of the misappropriated monies. Def. Motion at 16. The Court of Appeals in *Ford* noted that dismissal was appropriate where "the only way the United States is implicated in this litigation at all is that Defendants might have worked 'behind the scenes' to achieve the goal of the alleged conspiracy ...." 319 F.3d at 1309. Similarly, here, the transfer of funds to Miami bank accounts appears to amount to nothing more than an after-the-fact cover-up. Plaintiff's reliance on *Madanes v. Madanes*, 981 F.Supp. 241 (S.D.N.Y.1997) in misplaced. In *Madanes*, where the court denied Defendants' motion to dismiss, a number of the critical Defendants were

New York entities, most of the crucial documents were located in New York, and the fraud originated in New York. *Madanes*, 981 F.Supp. at 266.

Furthermore, the costs associated with any potential litigation would be far greater if this action were to proceed in Florida. As discussed above, the vast majority of potential witnesses and documents are located in Guatemala. Both parties intend on calling several witnesses that are not under Defendants' control, who reside in Guatemala and are not subject to this Court's process. Def. Motion at 17. Most, if not all of the witnesses Plaintiff must call to prove the alleged fraud are located in Guatemala. *See Proyectos Orchimex de Costa Rica, S.A. v. E.I. duPont de Nemours & Co.*, 896 F.Supp. 1197, 1202 (M.D.Fla.1995) (dismissal appropriate where "vast majority of material witnesses are located outside of this forum"); *Alfadda v. Fenn*, 159 F.3d 41, 47 (2d Cir.1998) (dismissal appropriate where all the defendants and much of the documentary evidence located in France).

Finally, the language barrier in this case favors dismissal. Nearly all of the witnesses that will be called at trial would testify in Spanish, and a majority of the relevant documents are in Spanish. *See* Affidavits attached to Def. Motion; *Callasso v. Morton & Co.*, 324 F.Supp.2d 1320, 1331 (S.D.Fla.2004) (granting motion to dismiss for *forum non conveniens* and finding that the likelihood of extensive Spanish testimony favors dismissal).

### 2. Public Interests

 "Relevant public interest factors include the sovereigns' interests in deciding the dispute, the administrative burdens posed by trial, and the need to apply for-

eign law." *Satz*, 244 F.3d at 1284. These factors weigh strongly in favor of dismissal as well. As Defendants point out, Lisa's principals have written letters to numerous public figures in Guatemala, sending documents to them relevant to this case and informing them that the "legal implications are important for the country." *See* Defs. Notice of Filing Materials Exs. 3 (letters from Juan Arturo Gutierrez). Plaintiff even issued a press release stating that this case "is one of the largest and most important in [Guatemala's] history." *Id.* at Ex. 9 (January 12, 2006 Press Release issued by Plaintiff). Additionally, the scope of this case is massive, and the "administrative burden of this case should be on the jurisdiction with the most significant contacts with the alleged occurrences," *i.e.* Guatemala. *Postol v. El–Al Israel Airlines, Ltd.*, 690 F.Supp. 1361, 1365 (S.D.N.Y.1988). The Court further notes that it appears that Guatemalan law will control this dispute, as under the significant relationship test, the Court will apply the law of the jurisdiction with the "most significant relationship to the occurrence and the parties . . . ." *Chierchia v. Treasure Cay Serv.*, 738 F.Supp. 1386, 1389 (S.D.Fla.1990) (internal quotations and citations omitted). Although the Court need not make an explicit finding as to which country's law applies, on the basis of the Complaint and the pleadings, and the fact that the fraud occurred in Guatemala, the conduct causing the injury occurred in Guatemala, the domicile, residence, nationality, place of incorporation and place of business of nearly all of the parties is Guatemala, and the place where the relationship between the parties is centered is Guatemala, it is probable that Guatemalan law will apply. *Id.* Plaintiff again relies on *Madanes* for the proposition that "a case may not be dismissed

simply because [the plaintiff's choice of forum] is a congested center of litigation and defendants have made no showing that [this forum] is prohibitively congested." *Madanes*, 981 F.Supp. at 266; Pl. Opp. at 19. While the Southern District of Florida does contain one of the busiest dockets in the United States, that is not the primary reason why this forum is inappropriate. The Court finds that Guatemala is a far more appropriate forum for all of the aforementioned reasons.

### C. Reinstatement of the Lawsuit

Finally, Defendants must show that the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. Plaintiff does not address this prong of the test in its Response to Defendants' Motion to Dismiss. Indeed, it is evident that Plaintiff will have no problem refiling this suit in Guatemala. Defendants have stipulated to the jurisdiction of the Guatemalan courts. Def. Motion at 27. Moreover, any claim of prejudice suffered by Plaintiff is unconvincing, in light of the fact that Plaintiff has filed dozens of lawsuits in Guatemala pertaining to alleged mismanagement of the Avicolas. *See* Def.'s Motion, Notice of Filing Aff. Exs. 60–61.

### IV. Conclusion

Based on the foregoing, it is ORDERED and ADJUDGED that Currently Served Defendants' Motion to Dismiss for *Forum Non Conveniens* is GRANTED. This case is DISMISSED WITHOUT PREJUDICE for Plaintiff to renew in Guatemala. In the event Plaintiff is unable to refile its case in Guatemala, then this action may be reinstated in this forum. It is further

ORDERED AND ADJUDGED that the Clerk of Court is directed to mark this case CLOSED. All pending motions not otherwise ruled upon are DENIED AS MOOT.